## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

**TERRELL STATON,**
　　　*Plaintiff*,

　　　　**v.**

**WARDEN CARON, et al.,**
　　　*Defendants.*

No. 3:22-cv-857 (VLB)

### INITIAL REVIEW ORDER
### AND ORDER ON PENDING MOTIONS

Plaintiff Terrell Staton, a sentenced[1] *pro se* inmate at Osborn Correctional Institution ("Osborn") in the custody of the Connecticut Department of Correction ("DOC"), filed this civil rights complaint under 42 U.S.C. § 1983.  [ECF No. 1 (Compl.)].

Plaintiff alleges facts about several events that occurred during his incarceration at Carl Robinson Correctional Institution ("Robinson").  [*Id.* at 4 (§ IV ¶ B).]  He asserts federal and state constitutional claims against the following DOC employees in their individual and official capacities: Commissioner Angel Quiros, Robinson Warden Caron, Correction Officer Kardulos, Lieutenant Martinez, Correction Officer Touchette, Correction Officer Joseph, Correction Officer Huff, Lieutenant Strachan, Lieutenant Perez, Correction Officer Gamble, Correction

---

[1] **The Court may "take judicial notice of relevant matters of public record."**  *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).  **Publicly available information on the DOC website shows that Plaintiff was sentenced on November 6, 2019, and is now housed at Osborn Correctional Institution.**  *See* **Conn. Dep't Corr. Inmate Info. (Dec. 1, 2022, 12:07 PM) http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=218482.**

Officer Dion, Disciplinary Hearing Officer Grimaldi, and Disciplinary Hearing Officer Officer "CZM." Plaintiff requests monetary damages as relief.   [*Id*. at 5 (§ VI).]

Plaintiff filed four motions in this action that are pending: Motion for Assistance of an Attorney, [ECF No. 7]; Motion to Institute a Claim into the Pre-Existing Claim for Reprisal and Relation, [ECF No. 8]; Emergency Motion for Temporary Restraining Order and Relief from Restrictive Housing Injunction, [ECF No. 9]; and Motion to Introduce Evidence, [ECF No. 10].

For the following reasons, the Court DISMISSES without prejudice Plaintiff's complaint for failure to state any plausible claims under 42 U.S.C. § 1983.  The Court also finds Plaintiff's pending motions to be MOOT.

I.     FACTS

       A.     <u>Procedural Background</u>

On October 21, 2021, Plaintiff filed a civil action, *Staton v. Commissioner*, 3:21-cv-01302-VLB.  On initial review, the Court *sua sponte* dismissed Plaintiff's complaint, because it did not comply with the Federal Rule of Civil Procedure 8 requirement for a "short and plain statement of the claim[.]"  [Case No. 3:21-cv-01302-VLB, ECF No. 17, (Order)].  In addition, the complaint "appear[ed] to be several distinct causes of action that [were] unrelated and misjoined."  [*Id.*]

The Court instructed Plaintiff that he could file separate lawsuits that "set forth claims stemming from a <u>single</u> transaction or occurrence."  *Id.* (emphasis in original).  The Court advised him that failure to comply with the Court's order could

result in dismissal of his case. *Id.* Thereafter, Plaintiff filed this action and five other cases.[2]

B. <u>Allegations</u>

The Court consider Plaintiff's complaint in the light most favorable to him, and construes his allegations as follows.

1. *Medical Conditions and Treatment*

Plaintiff is a carrier of "latent" tuberculosis.[3] [ECF No. 1 at 8 (§ VII ¶ G).]  He alleges he was denied certain diagnostic tests.  Although he suffered more than 56 headaches since January 2020, Plaintiff was denied a CT scan.  [*Id.* at 5 (§ V).]  He sustained an internal bruise on his lung but was denied an MRI and EKG.  [*Id.*]  On December 9, 2020, he had an X-ray taken, which he asserts "exposes that they did know of my latent tuberculosis exposure."  [*Id.*]

2. *COVID-19 Exposure*

Correction Officer Kardulos "contaminated the 6 building living environment on December 16, 2021," resulting in Plaintiff's quarantine from January 1, 2022 through January 11, 2022.  [*Id.* at 5 (§ IV ¶ D).]

Officer Kardulos was a COVID-19 "long-hauler" and used defective testing equipment prior to entering the prison.  [*Id.*  at 5 (§ IV ¶ D, § VI).]  Plaintiff claims

---

[2] Plaintiff's other cases are: *Staton v. Lamont*, No. 3:22-cv-854 (VLB), *Staton v. Comm'r of Corrs.*, No. 3:22-cv-855 (VLB), *Staton v. Quiros*, No. 3:22-cv-856, *Staton v. Quiros*, 3:22-cv-857, *Staton v. Shriver*, No. 3:22-cv-860 (VLB), and *Staton v. Gonzalez*, No. 3:22-cv-861 (VLB).

[3] The tuberculosis bacteria can cause two conditions: latent tuberculosis infection and tuberculosis disease.  Latent tuberculosis infection occurs when the bacteria lives in the body but is inactive and a-symptomatic.  *See Latent TB Infection and TB Disease*, Ctrs. Disease Control & Prevention (Dec. 1, 2022, 12:19 PM), https://www.cdc.gov/tb/topic/basics/tbinfectiondisease.htm.

3

that the DOC used defective COVID-19 tests, which he knows because he had symptoms but kept testing negative.  [*Id.* at 5 (§ V).]  Plaintiff did not test positive until January 1, 2022, after 18 months of nose swabs.  [*Id.*]

At 4:30 PM on April 12, 2022, Officer Kardulos lifted his mask to talk.  [*Id.* at 5 (§ IV ¶ D).]  Two days later, Plaintiff came down with a headache.[4]  [*Id.*]

### 3.    *Denial of Early Release*

The State of Connecticut considered "Medical 2 and 3" inmates for release to prevent harm (presumably from the COVID-19 virus).[5]  He was not released and was quarantined 120 days later.  [*Id.*]

Plaintiff was not considered for release or parole after he had completed 50% of his sentence.  [*Id.* at 5 (§ V).]  He claims, "Parole maliciously complied with the defamatory disciplinary ticket." [*Id.*]  Plaintiff does not specify a time period when these allegations took place.

### 4.    *Religious Deprivation and Restrictive Housing Placement*

From April 4 through 12, 2022 (approximately eight out of 30 days of Ramadan), Lieutenant Martinez deprived Plaintiff of participating in his religious service, the ritual Ramadan meal, which breaks the daily fast and must take place immediately at sundown.  [*Id.* at 5 (§ IV ¶ D, § VI).]  Correction Officer Kardulos

---

[4] In paragraph B of section IV, Plaintiff alleges: "Sick correctional staff was reengaged to impose his sickness to the plaintiff a second time January 1, 2022 and April 12, 2022.  The plaintiff got headaches and contracted COVID-19 by C/O Kardulos influence." [*Id.* at 4 (§ IV ¶ B).]  It is not clear whether Plaintiff is alleging that he contracted the COVID virus or another illness causing headaches from Officer Kardulos on April 12, 2022.

[5] Plaintiff does not allege about how an inmate qualifies to be a Medical Two or Three Inmate.  Nor does he indicate whether he is a Medical Two or Three Inmate.

curtailed Plaintiff's religious practices on April 12, 2022 at 4:30 PM.  [*Id.* at 5 (§ IV ¶ D).]

At 5:00 PM that day, Officer Kardulos and Lieutenant Martinez conspired to place Plaintiff in the Restricted Housing Unit ("RHU").[6]  [*Id.*]  Lieutenants Strachan, Martinez, and Perez; Correction Officers Yanez and Aybar; and four others used force while escorting Plaintiff to the RHU for "tampering with safety and security." [*Id.*]

Plaintiff was not  able to participate in Eid al-Fitr[7] on May 3, 2022, because Correction Officers Gamble and Dion failed "to call the Islamic service appropriately."  [*Id.* at 5 (§ V).]  Correction Officer Gamble "maliciously" denied Plaintiff the ability to attend the Eid al-Fitr prayer on that day.  [*Id.* at 5 (§ IV ¶ D).]

Upon release from the RHU (on an unspecified date), Plaintiff discovered that his earbud headphones and multiple court documents were missing.  [*Id.*]

## II.    STANDARD OF REVIEW

The Prison Litigation Reform Act requires district courts to review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon

---

[6] To the extent Plaintiff asserts a conspiracy claim under § 1983, this claim is conclusory and deficient. *See Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (holding conclusory, vague, and general allegations are insufficient to support a conspiracy claim). The Court therefore need not decide whether the intracorporate conspiracy doctrine applies to § 1983 claims.  *See Burrell v. Quiros*, No. 3:21-CV-393 (KAD), 2021 WL 1239916, at *6 (D. Conn. Apr. 2, 2021) ("Although the Second Circuit has not yet considered whether the intracorporate conspiracy doctrine applies to section 1983 cases, district courts within the Second Circuit have applied the doctrine in section 1983 cases and, in particular, to section 1983 cases filed by prisoners.").

[7] The Court presumes that Plaintiff's reference to "EID" is intended as Eid al-Fitr, which marks the end of Ramadan.  *See Eid-al Fitr*, Encyclopedia Britannica (Dec. 1, 2022, 12:42 PM) https://www.britannica.com/topic/Eid-al-Fitr.

which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'") (quoting 28 U.S.C. § 1915A).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)).  The relief claimed must be "plausible on its face."  *Id.* at 570.  A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."  *Twombly*, 550 U.S. at 555–57.  In other words, the allegations must rise "above the speculative level."  *Id.* at 555, 570.  Plausibility at the pleading stage is nonetheless distinct from probability,

and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted). Complaints filed by *pro se* plaintiffs "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am*., 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted).

Rule 21 provides that a court "may sever any claim against a party." Fed. R. Civ. P. 21. "The decision whether to sever a claim is committed to the sound discretion of the trial court." *Costello v. Home Depot U.S.A., Inc*., 888 F. Supp. 2d 258, 263 (D. Conn. 2012) (internal quotation marks omitted). The court must consider the following factors: "(1) the claims arise out of the same transaction or occurrence; (2) the claims present some common question of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) prejudice would be avoided; and (5) different witnesses and documentary proof are required for the separate claims." *Id.*

III.    DISCUSSION

Plaintiff claims Defendants violated his rights under "U.S.C.A. Articles I, IV, V, VIII, IX, and XIV" and the "Bill of Rights." [Compl. at 3 (§ II ¶ 3).] He lists claims of "deliberate indifference, gross negligence, discrimination in religious practice, retaliation animus, abuse of process, irreparable harm, retaliation and reprisal and cruel and unusual punishment." [*Id.*] The Court construes Plaintiff's complaint as asserting violations of his federal rights under the First, Fourth, Fifth, Eighth, Ninth

and Fourteenth Amendments to the United States Constitution.[8]  Plaintiff also asserts violations of the Connecticut Constitution.  [*Id.*]

The Court will first determine whether Plaintiff has alleged any plausible violations of his constitutional rights and then consider whether Plaintiff has misjoined his claims in this action.

A.    Eighth Amendment Deliberate Indifference to Health and Safety

Plaintiff's allegations raise Eighth Amendment concerns about deliberate indifference to his health and safety due to (1) failure to release him to protect him from COVID-19 infection, (2) exposure to the COVID-19 virus, and (3) inadequate testing for the COVID-19 virus.

The Eighth Amendment to the United States Constitution protects against the infliction of cruel and unusual punishment of sentenced prisoners.  *See* U.S. Const. amend. VIII.  Prison conditions that "involve the wanton and unnecessary infliction of pain" constitute cruel and unusual punishment under "the Eighth Amendment, which is applicable to the States through the Fourteenth Amendment."  *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981) (internal quotation marks and citation omitted).  The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of inmates in their

---

[8]  In Section V of his complaint, Plaintiff references adverse disparate treatment under Title VII.  Title VII is not applicable to this case as Plaintiff's allegations do not concern discrimination in the workplace based on his race, color, religion, sex or national origin. *See Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1737 (2020) ("In Title VII, Congress outlawed discrimination in the workplace on the basis of race, color, religion, sex, or national origin.").  Accordingly, any claim of Title VII violation is dismissed.

custody[.]" *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (internal quotation marks and citations omitted).

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate is required to demonstrate an objective and a subjective element. To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[ ]" or posed "a substantial risk of serious harm" to his health or safety. *Id.* at 834; *Rhodes*, 452 U.S. at 347. The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes,* 452 U.S. at 348.

To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, the defendants knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. Thus, the defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* at 837. An allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that the inmate allege the defendants acted with the mental state equivalent to "subjective recklessness" as that term is used in "criminal law." *Id.* at 840–41.

1.    *Failure to Release*

Plaintiff complains that the State of Connecticut "considered Medical 2 and 3 inmates for release to prevent harm by which [he] was quarantined 120 days later."  [Compl. at 5 (§ V).]  He states further that "the current administration left [him] vulnerable to demise in the event of the pandemic" due to his "being a carrier of 'latent' Tuberculosis[.]"  [*Id.* at 8 (VII ¶ G).]

"It is undisputed—and, indeed, by now common knowledge—that COVID-19 is a highly dangerous disease that poses a significant risk of severe illness and death."  *Houston v. Capra*, No. 20-CV-02135, 2022 WL 748260, at *8 (S.D.N.Y. Mar. 11, 2022); *see also Petitpas v. Griffin*, No. 20-CV-00769, 2020 WL 6826723, at *6 (D. Conn. Nov. 21, 2020); *Chunn v. Edge*, 465 F. Supp. 3d 168, 200 (E.D.N.Y. 2020) (citing cases).  For an inmate with a significant underlying condition, exposure to the COVID-19 virus could pose an unreasonable risk of serious damage to his health.  *Herbert v. Smith*, No. 20-CV-06348, 2021 WL 3292263 at *9 (S.D.N.Y. Aug. 20, 2021) (internal citations omitted).

Although latent tuberculosis is the inactive, asymptomatic stage of the bacterial infection, there is growing concern among researchers and governmental agencies around the world that contracting COVID-19 could suppress the immune system enough to activate the disease.  *See, e.g., Tuberculosis and COVID-19*, Brit. Columbia Ctr. for Disease Control (May 26, 2022) ("Recently, there is some evidence that if you develop severe COVID-19, you may be at increased risk of progressing to active TB if you have untreated TB infection. This may happen when COVID-19 infection causes a significant abnormal immune response and/or some

COVID-19 treatments weaken the immune system."); Noori M, et al., *Reactivation of Tuberculosis in the Setting of COVID-19 Infection*, Cureus. 2022 Mar 23; 14(3): e23417. DOI: 10.7759/cureus.23417; PMID: 35481299; PMCID: PMC9033637 ("COVID-19 causing an immuno-suppressive state can cause prone patients to have reactivation of latent infection."); C Maya, *A COVID trigger for tuberculosis?*, The Hindu (June 20, 2021), https://www.thehindu.com/news/national/kerala/a-covid-trigger-for-tuberculosis/article34859709.ece ("[E]merging evidence from various studies suggest that COVID and TB share a dysregulation of immune responses and the possibility of COVID-19 activating dormant/latent TB infection or triggering re-infections in those recovering from COVID is indeed real."); Padma Nagappan, *COVID-19 Could Activate Latent Tuberculosis*, San Diego State Univ. (Sept. 22, 2020), https://newscenter.sdsu.edu/sdsu_newscenter/news_story.aspx?sid=78173 ("Valafar explained that the TB bacterium is an opportunistic pathogen and remains latent, waiting for people's immune system to become compromised — as in the case of AIDS, or overwhelmed — as in the case of COVID-19, before it activates.").[9] Construed most broadly for purposes of initial review, Plaintiff's allegation of having latent tuberculosis is sufficient to raise an inference that a COVID-19 infection poses a serious risk of harm to Plaintiff's health and safety.

Plaintiff has not, however, satisfied the subjective element of the Eighth Amendment analysis. Plaintiff alleges no specific facts describing the process for

---

[9] "Worldwide, TB is the 13th leading cause of death and the second leading infectious killer after COVID-19 (above HIV/AIDS)." *Tuberculosis*, World Health Organization (Oct. 27, 2022), https://www.who.int/news-room/fact-sheets/detail/tuberculosis. In 2021, the largest number of new tuberculosis cases occurred in South-East Asian region. *Id.*

the decision not to afford him a release to protect him from COVID-19 infection. His allegations fail to indicate whether he was classified as a Medical Two or Three Inmate, whether he was considered and denied release, or whether he was not considered at all.  Even if his X-ray in December 2020 showed he had latent tuberculosis, Plaintiff has not alleged facts indicating that any named Defendant was provided with that information, otherwise knew or should have known that information, or had any role in the decision-making process.

Plaintiff has named as Defendants high ranking DOC officials, Warden Caron and Commissioner Quiros.  He cannot, however, hold a Defendant liable for violating his constitutional rights simply because of Defendant's position of authority within DOC.  In *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020), the Second Circuit clarified the pleading standard applicable to supervisory defendants in cases concerning alleged violations of constitutional rights.  The Second Circuit explained that "there is no special rule for supervisory liability" and "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Id.* (quoting *Ashcroft*, 556 U.S. at 676).  Thus, Plaintiff must allege facts showing that each defendant was personally aware of, and deliberately disregarded, facts showing a substantial risk to his health or safety.  *See id.* at 618-619.  Plaintiff has not satisfied this standard.

Accordingly, Plaintiff has not alleged a plausible Eighth Amendment claim against any Defendant based on deliberate indifference for failure to afford him

release to protect him from COVID-19 infection.  *See* 28 U.S.C. § 1915A(b)(1).  This claim is DISMISSED without prejudice.

### 2.   *Inadequate COVID-19 Testing*

Plaintiff asserts that the DOC tests for COVID-19 must have been defective because he had experienced symptoms but still tested negative.  [Compl. at 5 (§ V).]  Plaintiff's claim is based entirely on his own speculation about the effectiveness of the testing.  "To state a plausible claim, the complaint's factual allegations must be sufficient to raise a right to relief above the speculative level."  *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (citation and internal quotation and alteration omitted); *see, e.g., Allah v. Murphy*, No. 914CV0438GTSTWD, 2016 WL 4401069, at *6 (N.D.N.Y. May 16, 2016*), report and recommendation adopted*, No. 914CV438GTSTWD, 2016 WL 4386013 (N.D.N.Y. Aug. 17, 2016), *aff'd*, 699 F. App'x 41 (2d Cir. 2017) (plaintiff's claim that "'build up of mail stored in a large manilla envelope' suggest[ed] that his mail was being tampered with 'over some time'"  was conjecture and speculation and insufficient to establish a constitutional violation).  Accordingly, the Court DISMISSES without prejudice Plaintiff's claim of defective COVID testing.  *See* 28 U.S.C. § 1915A(b)(1).

### 3.   *COVID-19 Exposure From Officer Kardulos*

Plaintiff alleges that he tested positive for COVID-19 on January 1, 2022, and was quarantined from January 1 through January 11, 2022, after Officer Kardulos "contaminated the 6 building living quarters[.]"   [Compl. at 5 (§ IV, ¶ D; § V).][10]

---

[10] Plaintiff does not raise an Eighth Amendment claim based on his quarantine.  He does not allege any facts to suggest that his quarantine presented any risk of harm to his health and safety.

Plaintiff claims Officer Kardulos was a "long hauler of a-symptomatic COVID-19 which means the medical test upon him entering his employment [was] defective." [*Id.* at 5 (§ VI ¶ D).]

As the Court previously explained in Part III(A)(1), for initial pleading purposes, Plaintiff has sufficiently alleged that a COVID-19 infection poses a serious risk of harm to his health due to his underlying latent tuberculosis. Plaintiff has not, however, alleged facts to satisfy the subjective element of the analysis. The allegations do not indicate that Officer Kardulos acted with an intention to expose Plaintiff to the virus. Nor is there any plausible inference that Officer Kardulos was aware of his COVID-19 infection or that he acted with reckless disregard to measures to protect Plaintiff from exposure to the COVID-19 virus on December 16, 2021. As with his own test-related allegations, Plaintiff's allegation that Officer Kardulos' test was defective is pure speculation. *See Nielsen*, 762 F.3d at 218. In any event, Plaintiff's allegations do not suggest that Officer Kardulos was aware that he was using defective COVID-19 tests but continued to do so with indifference to the risk of exposing Plaintiff to the virus. *See James v. Annucci*, No. 20-CV-06952, 2021 WL 3367530, at *7 (W.D.N.Y. Aug. 3, 2021) (dismissing "conclusory allegations [that] fail[ed] to allege the subjective component of an Eighth Amendment claim and contain[ed] no amplifying details regarding Defendants' awareness that COVID-19 preventative measures were not being followed") (citations omitted).

Accordingly, Plaintiff has failed to allege a plausible Eighth Amendment claim against Officer Kardulos for exposing him to the COVID-19 virus, which he

contracted January 1, 2022.[11]   *See* 28 U.S.C. § 1915A(b)(1).   This claim is DISMISSED without prejudice.

### B.   Eighth Amendment Denial of Medical Treatment

Plaintiff alleges that he suffered more than 56 headaches since January 2020 but was denied a CT scan, and that he sustained a bruise on his left lung but was denied an MRI and EKG.   [Compl. at 5 (§ V).]   It is not clear whether Plaintiff asserts an Eighth Amendment medical indifference claim based on denial of his need for diagnostic testing or whether he is simply alleging facts about his underlying medical conditions as support for his Eighth Amendment COVID-19-related claims. Assuming the former, Plaintiff has not stated any plausible Eighth Amendment medical indifference claim.

Deliberate indifference to serious medical needs occurs when an official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.   *Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing *Farmer*, 511 U.S. at 837). Objectively, the alleged deprivation must be "sufficiently serious."   *Wilson*, 501 U.S. at 298.   The condition must be "one that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted).   A defendant must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their conduct.   *See Salahuddin v.*

---

[11] Plaintiff also alleges Officer Kardulos lifted his mask to talk on April 12, 2022 and that he developed a headache two days later.   [*See* Compl. at 5 (§ IV ¶ D).]   Even if Plaintiff is asserting that he contracted COVID or another illness from Officer Kardulos, he has not alleged sufficient factual allegations to show that Officer Kardulos acted with deliberate indifference by lifting his mask.

*Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006). Thus, a defendant's mere negligence is not cognizable on an Eighth Amendment deliberate indifference claim.  *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003)(citing *Estelle v. Gamble*, 492 U.S. 97, 105–06 (1976).  Although "mere medical malpractice is not tantamount to deliberate indifference," such medical malpractice may constitute deliberate indifference when it "involves culpable recklessness, i.e., . . . a conscious disregard of a substantial risk of serious harm." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553).

As a preliminary matter, Plaintiff fails to allege that any named Defendant denied him medical treatment or was involved with any medical decision concerning his care.   Furthermore, Plaintiff's complaint about his medical treatment is based on his disagreement with the treatment provided for his medical conditions.  The fact that a prisoner might prefer a different medical treatment does not give rise to an Eighth Amendment violation as long as the medical treatment provided was adequate.  *See Chance*, 143 F.3d at 703; *see e.g., Estelle,* 429 U.S. at 107 ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice, and as such the proper forum is the state court . . . .").

Thus, to the extent Plaintiff has asserted claims of Eighth Amendment medical indifference, any such claims are DISMISSED without prejudice under 28 U.S.C. § 1915A(b)(1).

16

C.    **Eighth Amendment Excessive Force**

Plaintiff alleges that Lieutenants Strachan, Martinez, and Perez; Correction Officers Yanez and Aybar; and four others used force to escort him into the RHU. He provides no other facts related to their supposed use of force.

To state a claim for use of excessive force in violation of the Eighth Amendment, Plaintiff must present evidence establishing objective and subjective components. *See Sims v. Artuz*, 230 F.3d 14, 20–21 (2d Cir. 2000). The objective component focuses on the harm done to the prisoner in light of contemporary standards of decency. The amount of harm required depends on the nature of the claim. *Id.* at 21. Although some degree of injury is usually required, Plaintiff need not show that he suffered a significant injury to state a claim for use of excessive force. *See Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) ("[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.") (quoting *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)). However, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Id.* at 37 (quoting *Hudson*, 503 U.S. at 9). A *de minimis* use of force will rarely be sufficient to satisfy the objective component unless the force used is also "repugnant to the conscience of mankind." *Id.* at 38. The subjective component of the excessive force standard requires a showing that the use of force was "carried out 'maliciously and sadistically' rather than as part of 'a good faith effort to maintain or restore discipline.'" *Id.* at 40 (quoting *Hudson*, 503 U.S. at 9).

17

The extent of the inmate's injuries is one factor the court may use to determine whether correctional staff could "plausibly" have considered the force necessary in a particular situation.  *Hudson*, 503 U.S. at 7.  Other factors include "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."  *Id.* (internal quotation marks and citation omitted).

Here, Plaintiff fails to allege sufficient facts to satisfy either the objective or subjective elements of the analysis.  Relevant to the objective element, Plaintiff fails to provide specific facts to describe the circumstances in which the force was used against him.  No facts indicate either the form or level of force used against him during his escort.  Thus, Plaintiff has not stated an objectively serious use of force to support his Eighth Amendment excessive force claims.

Likewise, Plaintiff's vague allegations fail to raise an inference that Defendants applied force maliciously or sadistically.  To properly plead a claim, a plaintiff must allege sufficient details to make out said claim. *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("[T]hough we are obligated to draw the most favorable inferences that [the plaintiff's]  complaint supports, we cannot invent factual allegations that he has not pled.").  Accordingly, Plaintiff's claims of Eighth Amendment excessive force are DISMISSED without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

D.      **First Amendment Free Exercise Deprivation**

Plaintiff complains that Lieutenant Martinez deprived him of the "ritual partaking of the Ramadan meal immediately at sundown" from April 4 through 12, 2022; Officer Kardulos curtailed his religious practices on April 12, 2022; and Correction Officers Gamble and Dion deprived him of breaking his fast of Ramadan at the appropriate time and participating in Eid al-Fitr on May 3, 2022.  [Compl. at 5 (§§ IV ¶ D & V).]  Thus, the Court considers whether he has alleged a plausible violation of the First Amendment Free Exercise Clause.

The Free Exercise Clause of the First Amendment "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005).  Prisoners retain "some measure" of protection under the Free Exercise Clause, but that protection must be balanced against "the interests of prison officials charged with complex duties arising from administration of the penal system." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citations and internal quotation marks omitted).  Thus, a prison official's conduct that substantially burdens a prisoner's exercise of religion will not violate the First Amendment "if reasonably related to some legitimate penological interests." *Id.* at 594 (citing *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987)); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) (explaining "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests").

Plaintiff must allege facts showing that he sincerely holds a particular belief, that the belief is religious in nature, and that the challenged action substantially

burdened his or her exercise of that belief.  *See Ford*, 352 F.3d at 588–91; *see also Cutter*, 544 U.S. at 720 ("The exercise of religion often involves not only belief and profession but the performance of physical acts such as assembling with others for a worship service or participating in sacramental use of bread and wine.") (internal citation omitted).

In considering whether a prisoner has demonstrated a sincerely held religious belief, the Court does not "evaluate the objective reasonableness of the prisoner's belief," but considers only whether the prisoner "sincerely holds a particular belief and whether the belief is religious in nature." *Ford*, 352 F.3d at 590.  A belief is substantially burdened where the state "puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Forde v. Zickefoose*, 612 F. Supp. 2d 171, 177 (D. Conn. 2009) (quoting *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)).  In determining whether a plaintiff's religious beliefs were substantially burdened, "[t]he relevant question" is whether the beliefs are "considered central or important to [the plaintiff's] practice of" his or her religion or faith. *Ford*, 352 F.3d at 593–94.  After a prisoner plausibly claims that a prison official substantially burdened the prisoner's exercise of a sincerely held religious belief, the prison official bears a "relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct," while the prisoner bears a burden to demonstrate that those interests were irrational or unreasonable. *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 591, 595).

Plaintiff has alleged that he was not permitted to engage in certain religious practices between April 4 through May 3, 2022.  But he fails to allege his sincerely

held religious beliefs.  *See, e.g., Richard v. Martin*, No. 3:20-CV-1354 (CSH), 2022 WL 5246814, at *5 (D. Conn. Oct. 6, 2022) (concluding plaintiff stated plausible First Amendment claim based on confiscation of prayer shawls where plaintiff alleged he was a devout Moorish-American Moslem and used prayer shawls for "'prayers and meditation to offer spiritual protection and to deepen [his] faith experience.'"); *Gawlik v. Semple*, No. 3:20-cv-564 (SRU), 2021 WL 4430601, at *13 (D. Conn. Sept. 27, 2021) ("Here, Gawlik alleges that he is a devout Catholic who prays every hour using his crucifix and rosary and that without the rosary and crucifix, he is unable to pray. At this stage of the proceedings, those allegations are sufficient to demonstrate that confiscation of the crucifix and rosary and refusal to return those items interfered with sincerely held religious beliefs.").   Moreover, he has not alleged facts suggesting that defendants' conduct posed a substantial burden on his sincerely-held religious beliefs. *See, e.g.*, *Williams v. Vargas*, No. 3:22-CV-1075 (SVN), 2022 WL 6771395, at *5 (D. Conn. Oct. 11, 2022) (concluding allegations plausibly stated that preventing plaintiff from observing Iftar imposed a substantial burden on his religious exercise, noting he alleged that participating in Iftar was "a common practice during the whole month of Ramadan," which supported his claim that Iftar was an important aspect of his religious exercise).

Plaintiff may be able to state a plausible claim that he was deprived of his right to religious exercise.  But to do so, he must first allege facts to raise an inference that he sincerely held a belief, that the belief is religious, and that Defendants' conduct substantially interfered his ability to exercise this belief.  *See Ford*, 352 F.3d at 588–91.  Furthermore, Plaintiff fails to allege any specific facts

describing how Officer Kardulos in particular curtailed his religious practice.  Thus, the Court dismisses Plaintiff's First Amendment free exercise claims under 28 U.S.C. § 1915A(b)(1) without prejudice.

     E.    <u>First Amendment Retaliation</u>

Plaintiff lists "retaliation animus" and "retaliation and reprisal" and violation of the First Amendment as claims.  [*See* Compl. at 3 (§ II ¶ B).]  Thus, the Court considers whether Plaintiff has alleged a First Amendment retaliation claim.

To plead a First Amendment retaliation claim, an inmate must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the Defendant took adverse action against [him or her], and (3) that there was a causal connection between the protected speech and the adverse action."  *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (citation omitted).  "An adverse action is defined as 'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'"  *Brandon*, 938 F.3d at 40 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)).  To allege causation, a plaintiff must assert facts that the protected speech or conduct "played a substantial part in the adverse action."  *Id.*; *Baltas v. Dones*, 3:22-cv-38 (MPS), 2022 WL 1239989, at *16 (D. Conn. Apr. 27, 2022) ("In order to allege causation, the inmate must state facts suggesting that the protected conduct was a substantial or motivating factor in the [defendant's] decision to take action against [him].") (internal quotation marks removed). Courts treat inmate retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—

can be characterized as a constitutionally proscribed retaliatory act." *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (citation omitted).  Consequently, the Second Circuit has required that prisoner retaliation claims "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015).

Plaintiff's claim of retaliation is "wholly conclusory."  First, he has not specified the Defendant or Defendants who retaliated against him.  Nor has he alleged facts suggesting that any Defendant or Defendants subjected him to adverse action in response to his exercise of protected conduct.  The Court will not construe Plaintiff's complaint to impute a retaliatory animus to any Defendant named in this action.  Accordingly, any First Amendment retaliation claims are DISMISSED without prejudice under 28 U.S.C. § 1915A(b)(1).

F.    Fourteenth Amendment Procedural Due Process

Plaintiff lists claims of "abuse of process" and Fourteenth Amendment violation.  [*See* Compl. at 3 (§ II ¶ B).]  Thus, the Court considers whether Plaintiff has alleged any plausible claims of Fourteenth Amendment procedural due process violation.

To state a claim for violation of his right to procedural due process, Plaintiff must allege facts showing that he had a protected liberty interest and that he was deprived of that interest without being afforded due process of law.  *See Walker v. Fischer*, 523 F. App'x 43, 44 (2d Cir. 2013) (citing *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001)).  In the prison context, which involves persons whose liberty interests have already been severely restricted because of their confinement in a

prison, a prisoner cannot show a cognizable deprivation of "liberty" unless he can show that he was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). As the Second Circuit has explained, courts must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Davis v. Barrett*, 576 F.3d 129, 133–34 (2d Cir. 2009) (per curiam); *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).

The procedural protections required under Fourteenth Amendment due process depend upon the context of the proceeding. *See Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987). In an administrative proceeding, the inmate is entitled only to "some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding" the matter. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983). In a disciplinary proceeding, "an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974)). Further, "due process requires that there be some evidence to support the findings made in the disciplinary hearing." *Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir. 1992).

Plaintiff alleges that he was placed in the RHU and that he received a "defamatory disciplinary ticket." [Compl. at 5 (§ IV ¶ D; § V).] The fact that Plaintiff

24

was allegedly wrongly accused does not alone give rise to Fourteenth Amendment claim. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (noting inmate "has no general constitutional right to be free from being falsely accused in a misbehavior report") (citation omitted).    Indeed, Plaintiff provides no  facts describing his confinement in the RHU in order to state a liberty interest.  Nor does he allege facts about the process for his RHU placement or disciplinary report. Accordingly, Plaintiff has not stated a plausible due process violation in connection with his RHU placement or disciplinary charges.

Plaintiff alleges he was not considered for release after he served "50% of his non-violent jail term" because "Parole maliciously complied with the defamatory disciplinary ticket."  [Compl. at 5 (§ V).]  Courts in this district have generally held that an inmate does not have a liberty interest in his release prior to expiration of his sentence.  *See Miller v. Lamont*, No. 3:20CV872 (MPS), 2020 WL 6136300, at *5 (D. Conn. Oct. 19, 2020) (dismissing inmate's procedural  due  process claim based on postponement of community release decision because the "plaintiff does not have a liberty interest in release to a community or residential placement"); *Luther v. Hunt*, No. 3:19-CV-744 (VAB), 2020 WL 127670, at *4 (D. Conn. Jan. 10, 2020), *reconsideration denied*, No. 3:19-CV-00744 (VAB), 2021 WL 311286 (D. Conn. Jan. 29, 2021) (stating that there are no procedural protections due to inmate in his application for community release because he has no liberty interest in release to a community or residential program); *see also Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979) (stating that there is no constitutional right to be released on parole or to other conditional

release from prison, prior to expiration of valid sentence).

Accordingly, Plaintiff has not stated a plausible procedural due process claim arising from his RHU placement, disciplinary report or denial of release prior to termination of his sentence. *See* 28 U.S.C. § 1915A(b)(1). This claim is DISMISSED without prejudice.

G.     Fourteenth Amendment Due Process:  Property

Plaintiff alleges that his "ear buds and court documents" were missing after he was released from the RHU. [Compl. at 5 (§ IV ¶ D).] Any Fourteenth Amendment due process violation for his property deprivation must be dismissed.

"A [Fourteenth Amendment] due process claim is not available to an inmate whose property is taken or destroyed by a prison [official] if the state provides an adequate remedy for the deprivation of property." *Jackson v. Dzurenda*, No. 3:11-CV-1668(RNC), 2012 WL 5448330, at *1 (D. Conn. Nov. 7, 2012); *see also Edwards v. Erfe*, 588 F. App'x 79, 80 (2d Cir. 2015) (prisoner can state a due process claim for loss of property only if the state has not created adequate post-deprivation remedies) (citing *Hudson*, 468 U.S. at 533).

Connecticut provides a remedy for individuals claiming unauthorized deprivations of property by state officers. *See, e.g., Sherman v. Corcella*, No. 3:19-cv-1889(CSH), 2020 WL 4043178, at *17 (D. Conn. July 16, 2020); *Longmoor v. Nilsen*, 329 F. Supp. 2d 289, 302 (D. Conn. 2004). Under Connecticut General Statutes § 4-141, *et seq.*, a prisoner may bring a claim against the State to the Connecticut Claims Commissioner unless there is another administrative remedy for his claim. The Second Circuit has found that Connecticut has adequate post-

deprivation remedies for lost property.  *See Riddick v. Semple*, 731 F. App'x 11, 13-14 (2d Cir. 2018).

As Connecticut has adequate post-deprivation remedies, Plaintiff cannot state a cognizable due process claim for his property loss.  Indeed, it is the DOC policy that, when an inmate is placed in restricted housing, a DOC employee is assigned to pack the inmate's property, inventory it, and place it in a designated, secure storage area once it "becomes known that the inmate shall not return to the housing unit."  DOC Admin. Directive 6.10 (Inmate Property) § 25 (June 26, 2013), https://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0610pdf.pdf.  Plaintiff has not alleged that his items were not ultimately returned to him.  To the extent Plaintiff's missing "court documents" could implicate his right to meaningfully access the courts, *see Lewis v. Casey*, 518 U.S. 343, 350 (1996),  he does not allege that the information is **not** publicly filed and/or could not be accessed with his counselor's assistance.  Accordingly, any due process claim based on the loss of his property is DISMISSED without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

### H.     Fourteenth Amendment Equal Protection

Plaintiff asserts he was subjected to adverse disparate treatment.  [Compl. at 5 (§ V).]  To the extent he asserts a violation of the Fourteenth Amendment Equal Protection Clause, Plaintiff has failed to state a plausible claim.

The Equal Protection Clause of the Fourteenth Amendment protects individuals from invidious discrimination.  It does not mandate identical treatment for each individual or group of individuals.  Instead, it requires that similarly situated persons be treated the same.  *See City of Cleburne v. Cleburne Living Ctr.*,

473 U.S. 432, 439–40 (1985). To state an equal protection claim, a plaintiff must allege facts showing that: (1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)).

Absent allegations to support "class-based" discrimination, an individual may state an equal protection claim by alleging that he or she has been intentionally and "irrationally singled out as a . . . class of one." *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 601 (2008). A plausible class of one claim requires the plaintiff to demonstrate an "extremely high degree of similarity" with the person to whom he or she is comparing himself or herself. *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010). The similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *See Witt v. Vill. of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015), *aff'd.*, 639 F. App'x 44 (2d Cir. 2016) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).

Plaintiff has not alleged that he was treated differently from individuals of other religions. Nor has he alleged that he was treated differently from any comparator so as to suggest violation of his equal protection rights under a class

of one theory.  Accordingly, any claim of Fourteenth Amendment equal protection violation is DISMISSED without prejudice under 28 U.S.C. § 1915A(b)(1).

### I.    Ninth Amendment

Plaintiff references the Ninth Amendment.  [Compl. at 3 (§ II ¶ B).]  Plaintiff cannot proceed on a claim of Ninth Amendment violation under section 1983.  The Ninth Amendment provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX.  The Ninth Amendment is a rule of construction; it is not an independent source of constitutional rights.  *See Griswold v. Connecticut*, 381 U.S. 479, 492 (1965); *Jenkins v. C.I.R.*, 483 F.3d 90, 92-93 (2d Cir. 2007).  Courts within the Second Circuit generally find that the Ninth Amendment is inapplicable to prisoner section 1983 actions.  *See, e.g., Muniz v. Goord*, 2007 WL 2027912, at *9 (N.D.N.Y. July 11, 2007) (citing cases).  The one situation where Ninth Amendment claims have been recognized deals with disclosure of private medical or mental health information.  *Id.*  Plaintiff includes no allegations that any Defendant improperly disclosed private medical or mental health information.  Thus, any Ninth Amendment claim is DISMISSED without prejudice.  *See*  28 U.S.C. § 1915A(b)(1).

### J.    Fifth Amendment

Plaintiff claims violation of the Fifth Amendment and abuse of process. [Compl. at 3 (§ II ¶ B).]  The Due Process Clause of the Fifth Amendment applies to the federal government while the Due Process Clause of the Fourteenth Amendment applies to the states.  *See Welch v. United States*, 136 S. Ct. 1257, 1261-62 (2016).  As all Defendants in this matter are state employees, there is no basis

for a due process claim under the Fifth Amendment.  In addition, no other provision of the Fifth Amendment is applicable to the facts of this case.  This claim is DISMISSED with prejudice, as amendment would be futile.  *See*  28 U.S.C. § 1915A(b)(1); *Shibeshi v. City University of New York*, 531 Fed. Appx. 135, 136 (2d Cir. 2013) (affirming dismissal without leave to amend where "leave to amended would be futile").

### K.    Fourth Amendment

Plaintiff references a Fourth Amendment violation.  [Compl. at 3 (§ II ¶ B).] The Fourth Amendment protects against unreasonable seizures and governs a claim arising from excessive force used in connection with an arrest.  *Poe v. Leonard*, 282 F.3d 123, 136 (2d Cir. 2002) ("The Fourth Amendment is not the proper source of [the plaintiff]'s constitutional right because [the defendant]'s objectionable conduct occurred outside of a criminal investigation or other form of governmental investigation or activity.").  Here, Plaintiff's allegations do not suggest that Defendants engaged in conduct that was part of a criminal investigation or other form of governmental investigation.  Accordingly, the Court DISMISSES Plaintiff's Fourth Amendment violation claim with prejudice on the grounds that amendment would be futile.  *See*  28 U.S.C. § 1915A(b)(1); *Riddick*, 731 F. App'x at 15.

### L.    Personal Involvement

Plaintiff has named as Defendants in this action Commissioner Quiros, Warden Caron; Correction Officers Touchette, Joseph, and Huff; and Disciplinary Hearing Officers Grimaldi and CZM.  Plaintiff has not, however, alleged any facts

about these Defendants in the body of his complaint.  Accordingly, the Court DISMISSES without prejudice Plaintiff's section 1983 claims for damages against these Defendants.  *See*  28 U.S.C. § 1915A(b)(1).

###### M.    Official Capacity Claims

Even assuming Plaintiff stated a plausible constitutional violation against a Defendant, he could not proceed on an official capacity claims for monetary, injunctive or declaratory relief.  Plaintiff cannot seek monetary damages from Defendants, who are state employees, in their official capacities because such claims are barred by the Eleventh Amendment.  *See, e.g. Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Thus, any claims for money damages against Defendants in their official capacities are not plausible.

The United States Supreme Court recognizes only a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit: when a plaintiff sues a state official acting in an official capacity for <u>prospective</u> injunctive relief for <u>continuing</u> violations of federal law.[12]  *See Ex parte Young*, 209 U.S. 123 155–56 (1908).  The exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past."  *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993).

Here, Plaintiff has not alleged any ongoing violation of his constitutional rights in this matter.  In addition, Plaintiff's official capacity claims based on

---

[12] Any state law claims against a state official in their official is barred by the Eleventh Amendment.  *Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020).

Defendants' conduct while he was incarcerated at Robinson are moot because he is now housed at Osborn.  *See McCray v. Lee*, 963 F.3d 110, 117 (2d Cir. 2020) ("An inmate's transfer from a prison facility moots his claims for declaratory or injunctive relief against officials of the transferring facility.").  Accordingly, the Court DISMISSES without prejudice Plaintiff's section 1983 official capacity claims. *See* 28 U.S.C. § 1915A(b)(1).

        N.    <u>Misjoinder</u>

        Rule 20 of the Federal Rules of Civil Procedure permits a plaintiff to sue multiple defendants in the same lawsuit only if the allegations arise "out of the same transaction, occurrence, or series of transactions or occurrences" and there are "question[s] of law or fact common to all defendants."  Fed. R. Civ. P. (a)(2). When the complaint fails to satisfy this Rule, a court may sever the claims. *See* Fed. R. Civ. P. 21; *Sanchez v. O'Connell*, No. 3:08cv706 (JBA), 2010 WL 7862797, at *1 (D. Conn. Sept. 27, 2010) (noting that courts have held claims are misjoined when they fail to satisfy Fed. R. Civ. P. 20(a)); Fed. R. Civ. P. 20(a)(2) (establishing that defendants may be joined in an action if a right to relief is asserted against them "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action").

        In deciding whether to sever a claim for misjoinder, the Court should consider the following factors: "(1) the claims arise out of the same transaction or occurrence; (2) the claims present some common question of law or fact; (3) . . . settlement of the claims or judicial economy would be facilitated; (4) prejudice

would be avoided; and (5) different witnesses and documentary proof are required for the separate claims." *Fletcher v. City of New London*, No. 3:16-cv-241 (MPS), slip op. at 8 (D. Conn. Feb. 21, 2017) (quoting *Costello*, 888 F. Supp. 2d at 263).  The Court must take care to sever cases when the transactions or occurrences are so disparate it could prejudice the defendant.  *See Costello*, 888 F. Supp. 2d at 265; *Gomez v. Carter*, No. 3:04CV450(MRK), 2007 WL 951631, at *2 (D. Conn. Mar. 29, 2007) (stating misjoinder requires reversal if it causes "actual prejudice" to defendant at trial).

In this action, Plaintiff has not wholly complied with this Court's order dated October 21, 2021 in 3:21-cv-01302-VLB, directing him to file separate actions for factually-distinct allegations.  Here, Plaintiff's claims arise from what are essentially four transactions or occurrences:  (1) failure to provide him with diagnostic testing for a series of headaches and a bruised lung; (2) events related to Plaintiff's COVID-19 exposure; (3) the DOC's decision not to release Plaintiff early during the COVID-19 pandemic; and (4) events that took place in April and May 2022, arising from religious practices and leading to his RHU placement and disciplinary charges.

As the Court previously explained, all of his claims are dismissed.  Plaintiff may file an amended complaint in <u>this</u> action that contains <u>only</u> allegations related to events that took place in April and May 2022, concerning religious practices, RHU placement, and disciplinary charges. These allegations arise from related transactions and occurrences.  Both Captain Martinez and Officer Kardulos allegedly subjected Plaintiff to religious deprivations on April 12, 2022, the same

day they placed him in the RHU and he was issued disciplinary charges.  [*See* Compl. at 5 (§ IV ¶ D), 16. ] In addition, the religious deprivations appear to relate to practices and services in connection with Ramadan.  [*Id.* at 5 (§ IV ¶ D, § V).]

Should Plaintiff wish to pursue his claims arising from (1) events related to Plaintiff's COVID-19 exposure, (2) the DOC's decision not to release Plaintiff to prevent him from harm during the COVID-19 pandemic, and (3) failures to provide him with diagnostic testing for a series of headaches and a bruised lung, he must do so in separate actions.  These allegations concern facts and legal claims distinct from his allegations about his RHU placement, disciplinary charges or religious deprivations.  Nor do these three types of allegations appear to be related to each other.

There are several reasons why the case must be severed in this way.  First, judicial economy would not be served by considering his claims arising from these several distinct legal analyses and factual predicates in this single action.  Second, Defendants would be prejudiced by having to present different sets of evidence and witnesses for claims based on unrelated occurrences in this single action. Third, settlement negotiations would also be hindered by having to consider several distinct claims involving separate facts and legal theories.   Because Plaintiff's complaint includes claims that arise under different legal theories and are not reasonably related, the case currently suffers from improper joinder.  *See Lindsay v. Semple*, No. 3:19CV00751(JCH), 2019 WL 3317320, at *11 (D. Conn. July 24, 2019) (claims were improperly joined because the "claims arise under different legal theories and do not contain any questions of law or fact common to the due

process claim"); *Webb v. Maldonaldo*, No. 3:13CV00144(RNC), 2013 WL 3243135, at *3 (D. Conn. June 26, 2013) ("In this case, the complaint joins in one action claims that are wholly unrelated.  For instance, it asserts Eighth Amendment claims of excessive force against some of the defendants, while also asserting a First Amendment claim against other defendants based on a DOC policy prohibiting certain sexually explicit materials.").

This is not the first time the Court has directed Plaintiff to file separate actions for each distinct transaction or occurrence.  That is, in the Court's Initial Review Order for *Staton v. Commissioner*, the Court stated:

> Plaintiff must set forth claims stemming from a single transaction or occurrence, not five-plus distinct events.  He may file <u>separate lawsuits</u> for <u>each</u> of the remaining distinct events.  For each refiled complaint, Plaintiff must allege facts as they occurred in chronological order.  If he files a complaint that does not comply with this Order, his case may be dismissed with prejudice.

[*Staton v. Comm'r*, Case No. 3:21-cv-1302-VLB, ECF No. 17 (Initial Review Order).] Plaintiff thereafter filed six separate actions.  It appears some of the facts in these cases overlap and, in any event, <u>this</u> case still suffers from a failure to state a claim and misjoinder.  If Plaintiff persists in filing misjoined claims—after having been <u>twice</u> advised of the misjoinder rule, provided an illustration of its application and directed to refile—and the complaint continues to be deficient, the Court will deny leave to amend as futile.  *See Shakur v. Selsky*, 291 F.3d 106, 112 (2d Cir. 2004) (permitting 28 U.S.C. § 1915A dismissals with and without prejudice); *Grullon v. City of New Haven*, 820 F.3d 113, 139-40 (2d Cir. 2013) (stating a court should grant leave to amend a *pro se* complaint "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated"); *Rosa v. Cook*,

No. 3:22CV00703(SALM), 2022 WL 2981574, at *13 (D. Conn. July 28, 2022) ("If the Amended Complaint asserts claims that the Court has already explained are not cognizable, such claims will be summarily dismissed. The Court may not grant further leave to amend if the Amended Complaint fails to state a cognizable claim.").

O.   State Law Claims

Because no federal claim in this action survives initial review, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims of violation of the Connecticut Constitution. See 28 U.S.C. § 1367(c)(3) (providing that the court may decline to exercise supplemental jurisdiction over a state law claim if the court has dismissed all claims over which it has original jurisdiction). Accordingly, Plaintiff's claims under the Connecticut Constitution are DISMISSED without prejudice.

P.   Pending Motions

Also pending are Plaintiff's four motions: (1) a motion for assistance of an attorney [ECF No. 7]; (2) a motion to institute a claim into the pre-existing claim for reprisal and retaliation [ECF No. 8]; (3) an emergency motion for temporary restraining order and relief from restrictive housing Injunction [ECF No. 9]; and (4) a motion to introduce as evidence [ECF No. 10]. Because the Court dismisses Plaintiff's complaint for failure to state any plausible claims under 42 U.S.C. § 1983, these motions are all MOOT.

With respect to the motion to institute a claim into the pre-existing claim for reprisal and retaliation, the Court notes Plaintiff's one-page motion asserts that

Correction Officer Hill retaliated against him after he filed this case on July 8, 2022. Officer Hill is not a named defendant in this action.  In addition, any retaliatory conduct taken by Officer Hill against Plaintiff for filing this matter would not be reasonably related to his other claims in this action and judicial economy would not be served by joining such claim in this action.  *See* Fed. R. Civ. P.  20 & 21. Further, it is unlikely that Plaintiff has exhausted his administrative remedies for such claim prior to filing his motion to institute this retaliation claim against Hill as required by the Prison Litigation Reform Act.  Plaintiff may pursue this claim in a separate action after he has exhausted his administrative remedies.

Plaintiff has filed these same kinds of motions in his other actions, sometimes multiple times per case.  Where the Court has denied a motion and explained the reasons for the denial—such as the motion is premature, fails to satisfy the legal standard warranting relief, is procedurally improper, or is frivolous—Plaintiff must refrain from re-filing motions that fail to correct the issues raised by the Court.  Put another way, Plaintiff may not keep re-filing motions that lack merit.  Repeated filing of frivolous motions may result in sanctions, which could result in the denial of his ability to file future lawsuits.  *See* Fed. R. Civ. P. 11(c) (permitting sanctions for frivolous pleadings and motions); D. Conn. L. Civ. R. 16(g) ("The Court may impose sanctions directly against counsel and any party who disobeys an order of the Court or intentionally obstructs the effective and efficient administration of justice.").

**ORDERS**

For the foregoing reasons, the Court DISMISSES Plaintiff's complaint without prejudice for failure to state any plausible federal claims, *see* 28 U.S.C. § 1915A(b)(1), with the exception that Plaintiff's Fourth and Fifth Amendment violation claims are DISMISSED with prejudice, because leave to amend would be futile.

The Court declines to exercise supplemental jurisdiction over any of Plaintiff's state law claims, which are DISMISSED without prejudice.  *See* 28 U.S.C. § 1367(c)(3).

The Court severs from this action Plaintiff's allegations concerning (1) events related to Plaintiff's COVID-19 exposure, (2) the DOC's decision not to release Plaintiff to prevent him from harm during the COVID-19 pandemic, and (3) failures to provide him with diagnostic testing for a series of headaches and a bruised lung.  If Plaintiff wishes to pursue claims arising from these allegations, he must do so in separate actions.

The following pending motions are MOOT:

(1) Motion for Assistance of an Attorney, [ECF No. 7];

(2) Motion to Institute a Claim into the Pre-Existing Claim for Reprisal and Relation, [ECF No. 8];

(3) Emergency Motion for Temporary Restraining Order and Relief from Restrictive Housing Injunction, [ECF No. 9]; and

(4) Motion to Introduce Evidence, [ECF No. 10].

Plaintiff may file, within thirty days of this order's issuance, an amended complaint to reallege his claims arising from his RHU placement, disciplinary charges and religious deprivations from April 4 through May 3, 2022.

Any amended complaint must set forth specific facts describing a Defendant or Defendants' acts or omissions that resulted in a violation of his constitutional rights.  Plaintiff must name all Defendants against whom he asserts claims in the case caption.

Plaintiff is advised that any amended complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference.

Plaintiff is instructed to use the District of Connecticut amended complaint form that will be sent to him.  If Plaintiff fails to file an amended complaint within the thirty day period, the Court will dismiss this action with prejudice.

The clerk is instructed to send Plaintiff a copy of the District of Connecticut's prisoner *pro se* amended complaint form.

                               ____/s/_____
                                 Vanessa L. Bryant
                                 United States District Judge

SO ORDERED at Hartford, Connecticut this 2nd day of December, 2022